UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| LAWRENCE LEE MCDONALD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:09-cv-473-JAW |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION COMMISSIONER, | ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDED DECISION ON SSD & SSI CLAIMS
AND ORDER ON MOTION TO INTRODUCE NEW EVIDENCE**

At the conclusion of the administrative process, Lawrence McDonald, a former factory worker/tanner and truck driver, was found to have the following severe impairments: insulin-dependent adult onset diabetes mellitus, mild degenerative arthritis of the knees, and morbid obesity. McDonald's impairments make him unable to perform his past work. However, the Administrative Law Judge found that he had a residual functional capacity from his alleged onset date through the date of decision that would enable him to perform unskilled sedentary occupations, subject to certain exertional limitations. McDonald has appealed the decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), alleging various errors at Steps 2, 3, 4, and 5 of the sequential evaluation process and a failure to explain adequately why the Administrative Law Judge's decision differed from that of the Federal Reviewing Official. McDonald also posits that this court should accept new evidence in support of his claim. The motion to supplement the record is denied. For reasons that follow, I recommend that the Court affirm the Commissioner's decision to deny benefits.

## THE MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Shortly after filing his Statement of Errors, McDonald filed a motion requesting that he be permitted to supplement the administrative record with medical reports concerning a cardiac event he experienced roughly eight months after the Administrative Law Judge rendered the decision under review. In the underlying decision, the Administrative Law Judge determined that McDonald "undoubtedly had an episode of deep venous thrombosis prior to the alleged date of onset of his disability." (Finding 3, R. 13.) However, the Administrative Law Judge did not regard this event as demonstrating a severe impairment at Step 2 of the sequential evaluation process, either alone or in combination with other diseases or impairments. The episode of deep venous thrombosis occurred in 2002. The claimed onset of disability was October 2, 2007. The medical records do not describe any recurrence of deep venous thrombosis over the intervening years.

According to the motion and the attached exhibits, McDonald experienced a cardiac event in January 2010 described as a "new-onset atrial fibrillation." (Jan. 11, 2010, Cardiology Consultation Report, Doc. No. 14-1 at 2.) The cardiology consultation record indicates no prior cardiac history and a presentation based on complaints of shortness of breath. (Id.) An EKG was consistent with atrial flutter. (Id.) Plans to treat this condition by cardioversion were later negated when a transesophageal echocardiogram revealed "a probable clot seen at the left atrial appendage apex." (Id. at 10, 12.) Among the imaging findings was an assessment of "changes consistent with congestive heart failure." (Id. at 7.) A lung scan "was consistent with low probability of pulmonary embolus." (Id. at 6.) A narrative discharge summary indicated PE (pulmonary embolus) "was ruled out by V/Q scan and negative Dopplers here." (Id. at 12.)

Imaging of McDonald's lower extremities was negative for deep venous thrombosis. (Id. at 8, 10.)

In considering whether McDonald had a combination of impairments that were "severe" enough to satisfy Step(s) 3, 4, and/or 5 of the five-step sequential evaluation process, the Administrative Law Judge grouped three impairments as severe: insulin-dependent, adult onset diabetes mellitus; mild degenerative arthritis of the knees; and morbid obesity. He did not include among the severe impairments deep venous thrombosis because McDonald experienced an episode of it in 2002, but there was no evidence of recurrence over the course of the intervening years. (Finding 3, R. at 12-13.)

In McDonald's view, the records of his January medical event reflect post-hearing symptoms arising from an underlying blood-clotting condition and, therefore, the Administrative Law Judge's assessment that there has been "no objective medical evidence" of recurrent thrombosis should not be relied on to find him other than fully disabled. (Mot. at 2, Doc. No. 14.) According to McDonald, had this cardiac event happened prior to the hearing, the Administrative Law Judge "would have had to have found [him] fully disabled." (Id. at 4.) The Commissioner argues that the new evidence is not material "because it neither relates to the time period for which benefits were denied nor reasonably would have influenced the ALJ's decision." (Def.'s Response at 3, Doc. No. 15.) According to the Commissioner, "the newly-submitted evidence would not have affected the ALJ's finding that Plaintiff's single episode of deep venous thrombosis in 2002 . . . had not recurred or caused any significant symptoms that would affect Plaintiff's ability to perform work-related activities." (Id. at 4.)

McDonald's motion implicates sentence six of 42 U.S.C. § 405(g), though he does not cite it:

3

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

"Typically, a request for a sentence-six remand concerns 'new evidence . . . presented after the ALJ decision[.]'" Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). Sentence six allows for a "pre-judgment remand" and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings. Seavey v. Barnhart, 276 F.3d 1, 13 (1st Cir. 2001); Freeman v. Barnhart, 274 F.3d 606, 610 (1st Cir. 2001). On a cautionary level, the First Circuit has observed that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided—to the end that the process not bog down and unduly impede the timely resolution of social security appeals." Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987). Thus, pre-judgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is "material," as in "necessary to develop the facts of the case fully." Id. at 139. New evidence of an infirmity or impairment is not automatically material. The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing; that the earlier decision "might reasonably have been different" had the evidence been considered by the Commissioner." Id. at 140 (quoting Falu v. Sec'y of Health and Human Servs., 703 F.2d 24, 27 (1st Cir. 1983)). There is a temporal concern, as well. The evidence must be material to the issue of "the claimant's condition during the time period for which benefits were denied," as opposed to the development of a new disability. Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988).

Rather than requesting remand or making any reference to Section 405(g), McDonald has requested that he be permitted to submit "supplemental pleadings" under Rule 15(d) of the Federal Rules of Evidence, which permits a party to serve a supplemental pleading setting forth events or occurrences happening after the original pleading was filed. McDonald does not offer any citation of authority other than Rule 15(d) and makes no mention of remand. Technically, McDonald's motion is flawed for failing to request a sentence-six remand. McDonald's request is, instead, that this Court accept his new evidence and potentially overturn the Commissioner's decision based on evidence never presented to the Commissioner. Such an approach would be contrary to the structure of the Acts, which call for judicial review of the Commissioner's decision. Obviously, the Commissioner cannot be faulted for failing to consider evidence not in existence at the time of the administrative hearing and not presented by McDonald in an administrative appeal. Although McDonald does not invoke the proper authority, I have construed McDonald's arguments in light of the sentence-six good cause and materiality factors.[1]

Proceeding from an assumption that McDonald's presentation meets the good cause standard because the evidence in question was not available for timely administrative consideration, I conclude that the motion should be denied because McDonald fails to meet the materiality standard. Specifically, the new medical records submitted by McDonald do not offer either a reliable medical basis for finding a recurrence of deep venous thrombosis or a reliable explanation why the "probable clot seen at the left atrial appendage apex" is evidence that a severe "thrombosis impairment" existed between the alleged onset of disability in October 2007 and the date of the administrative hearing, as opposed to a new-onset cardiac condition. In other

---

[1] Frankly, it is not clear that McDonald actually desires a remand, even after the issue was discussed at the hearing. My impression is that McDonald would prefer a remand if his case would otherwise be unsuccessful.

words, there is no medical source evidence to support a finding of a relationship between the 2002 deep venous thrombosis condition and the 2010 cardiac condition. Consequently, I conclude that McDonald fails to carry the burden of demonstrating that the new evidence might reasonably call for a different decision by the Administrative Law Judge if this matter were remanded for further evidentiary proceedings. Based on the preceding discussion, I deny Mr. McDonald's motion (Doc. No. 14), whether that motion be characterized as a motion to supplement the record or as a motion for a "sentence six" remand under 42 U.S.C. § 405(g).

## DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

Although MacDonald's Statement of Errors is somewhat difficult to follow, his major contentions are that the Administrative Law Judge (1) erred at Step 2 when he failed to find the deep venous thrombosis and/or dependent limitations to be severe, (2) erred at Step 3 when he failed to find that MacDonald met or exceeded the listing requirements for diabetes mellitus (Listing 9.08) and for major dysfunction of a joint (Listing 1.02), and (3) erred at Step 4 in making a determination regarding residual functional capability, which resulted in (4) error at Step 5.[2]

**A.      Step 2**

At Step 2 the Administrative Law Judge must determine whether the claimant has a medically determinable impairment that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). The claimant bears the burden of proving to the Commissioner that an impairment or combination of impairments is "severe," though this is understood to be a *de*

---

[2]     The Social Security Administration has established a five-step sequential process for determining whether an individual is disabled. This decision assumes familiarity with that process. See Goodermote v. Sec'y of Health and Human Servs., 690 F.2d 5, 7 (1st Cir. 1982) (referencing steps "simply to orient the reader as to where we are in the constellation of SSI rules and regulations").

*minimis* burden, designed merely to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).

As for the deep venous thrombosis episode in 2002, the Administrative Law Judge found: "While the claimant undoubtedly had an episode of deep venous thrombosis prior to the alleged onset of his disability, there is no objective medical evidence that it has recurred." (R. 13.) The Administrative Law Judge rejected deep venous thrombosis as a severe impairment based on McDonald's failure to establish with medical evidence a recurrence of deep venous thrombosis or any severe residuals. (Id.) Substantial evidence for this finding exists in the record. A case analysis provided by M. S. Druskin, M.D., indicates that impairment due to deep venous thrombosis was severe in 2002 but did not last one year and recurrence was not demonstrated. (Ex. 5F, R. 252.) As for residual impairment allegedly associated with the deep venous thrombosis episode of 2002, there was an episode in October 2006 where McDonald experienced inflammation of his right calf after he stopped taking Aspirin. (Ex. 1F, R. 228.) His treating physician, Dr. Martin Hrynick, ordered an ultrasound. Dr. Hrynick observed that, if the ultrasound returned negative (which it did), he would suspect low-grade cellulitis complicating postphlebetic changes.[3] (Id.) In his case analysis, Dr. Druskin indicated that cellulitis was

---

[3] McDonald continued working during this period. An ultrasound performed in November 2007, shortly after the alleged onset date, produced the following radiology reports:

> The deep venous system is patent throughout its visualized course. There is no evidence of thrombus formation, occlusion, or abnormal flow. . . .

(R. 230.)

> Conclusion: Negative study for Deep Venous Thrombosis in right lower extremity.

7

episodic and did not last one year and that the clinical notes associated with it are not readable and do not provide support for a contrary opinion. (Id.) Dr. Druskin's case analysis provided the Administrative Law Judge with a substantial evidentiary basis to discount the severity of the long-past deep venous thrombosis and the potentially "dependent" cellulitis.

In a letter sent to the Maine Department of Health and Human Services, Dr. Hrynick stated that McDonald "also suffers from dependent edema with stasis dermatitis and recurring, severe inflammation in his legs." (Ex. 3F, R. 242.) According to Dr. Hrynick: "This was probably being aggravated by his occupation as a truck driver, sitting for long periods with his legs dependent." (Id.) The Administrative Law Judge concluded that the evidence did not support a finding of a severe venous impairment in McDonald's right lower extremity. In reaching this finding, the Administrative Law Judge did not interpret the medical records on his own. Rather, he explained that he did not credit Dr. Hrynick's opinion of a "severe" impairment associated with the right lower extremity because the doctor's letter statement to this effect is not supported by contemporaneous treatment records documenting, among other things, recurring "incompetence" or pain or edema or a need to elevate or apply heat to the leg on a periodic basis that would satisfy the durational requirements[4] of the Acts. (Finding 3, R. 13.) McDonald's Statement of Errors and his presentation at the hearing failed to identify any medical records or clinical notes to gainsay this conclusion. I conclude that the Administrative Law Judge did not

---

(R. 231.)

[4] To meet the durational requirement an impairment must be "expected to result in death," or else it "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The record contains evidence of post-phlebitic change that would meet the durational requirement. However, the Administrative Law Judge concluded that the record lacked evidence of severe impairment dependent on post-phlebitic change and meeting the durational requirement. The medical records reflect a spell of "low-grade cellulitis" (R. 228), but not necessarily a perpetual or permanent, severe limitation. Dr. Druskin's Case Analysis was substantial evidence supporting the finding that this was not evidence of a severe impairment.

err in finding that McDonald failed to carry his burden of demonstrating a severe venous impairment dependent on the 2002 deep venous thrombosis event.[5]

Even assuming an error exists here, it was harmless. If an error is made at Step 2 because the Commissioner has failed to find that a particular impairment is severe, that error is necessarily harmless on appeal, unless the plaintiff can demonstrate to the court that the error would call for a different resolution of the claim at Steps 3 through 5. Bolduc v. Astrue, No. 09-cv-220-B-W, 2010 WL 276280, *4 n.3 (D. Me. Jan. 19, 2010) (Rich, Mag. J., Rec. Dec. adopted by Woodcock, C.J.) (collecting cases). The Administrative Law Judge made some allowance for McDonald's allegations of venous impairment in his right lower extremity in the course of making his residual functional capacity (RFC) finding. Specifically, he called for a sit/stand option. For reasons that follow, even if it was error to omit the venous impairment in the right lower extremity at Step 2, McDonald fails to show that the Administrative Law Judge's RFC finding at Step 4 did not sufficiently address the degree of functional limitation associated with it.

**B.     Step 3**

MacDonald's Step 3 challenge apparently consists of a claim that the Administrative Law Judge was compelled to conclude that he met a listing because the Administrative Law Judge found some severe impairments at Step 2. (Statement of Errors at 14-15, 18-19.) This argument flies in the face of accepted practice under the five-step sequential process. Proving the existence of one or more severe impairments at Step 2 does not, in itself, entitle the claimant to benefits. Impairments identified as "severe" at Step 2 are measured at Step 3 against the

---

[5]     "[I]n evaluating . . . episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." Wilcox v. Sullivan, 917 F.2d 272, 277 (6th Cir. 1990). The record generated by McDonald is insufficient to carry his burden on these issues. The Administrative Law Judge effectively concluded as much. (Finding 3, R. 13.)

Commissioner's Listing of Impairments to determine if they are severe enough to automatically qualify for disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d); see also Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (describing satisfaction of a listing as calling for a conclusive presumption of a disabling impairment); Singh v. Apfel, 222 F.3d 48, 451 (8th Cir. 2000) ("If the claimant suffers from an impairment that is included in the listing of presumptively disabling impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience.").

McDonald's briefing is insufficient to explain why or how he meets a listing or why his limitations are equivalent to a particular listing. The only Step 3 argument I can discern from the Statement of Errors and the statements counsel made at hearing is that McDonald should be regarded as disabled at Step 3 because his deep venous thrombosis could recur at any moment and might result in his death. (Statement of Errors at 15.) McDonald fails to point out any medical evidence in the record suggesting that his care provider(s) expected his condition would likely result in death. In any event, McDonald fails to cite any authority to support the broad proposition that potentially fatal disease compels a finding of disability. The Commissioner's basic definition of disability does not support this theory. 20 C.F.R. §§ 404.1505, 416.905 (indicating that the issue turns on the ability to perform substantial gainful work existing in the economy). McDonald otherwise relies on the records associated with his 2010 cardiac episode in support of his argument. (Statement of Errors at 15-18.) For reasons explained in connection with denial of the "motion to supplement," this avenue does not afford relief to McDonald. McDonald's remaining argument concerning an alleged Step 3 error actually concerns the residual functional capacity question associated with Step 4. (See id. at 19-20.)

## C. Step 4

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv). 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his residual functional capacity does not enable him to engage in his past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f).

The Administrative Law Judge made the following finding concerning McDonald's RFC:

> [T]he claimant has the residual functional capacity to perform a reduced range of work activity of a light exertional level . . . In particular, he is limited to lifting and carrying no more than ten pounds frequently and not more than twenty pounds occasionally. He can stand or walk for a total of two hours out of an eight-hour work day, but for no more than a one hour at a time. He can sit, with normal breaks, for a total of six hours in an eight-hour work day, provided he has the opportunity to alternate between sitting and standing for one to two minutes every one to two hours. He is capable of no constant pushing or pulling with either lower extremity. He is limited to performing occupations that require no more than occasional postural maneuvers, such as climbing on ramps and stairs, balancing, stooping, kneeling or crouching. He must never climb on ropes, ladders or scaffolding. He must never crawl. He must avoid extreme heat. He must avoid walking on irregular or otherwise demanding terrain.

(Finding 5, R. 16.) Substantial evidence in the record supports this finding. (Paul Stucki RFC Assessment, Ex. 4F, R. 244.)

McDonald argues that portions of the RFC finding are inconsistent with the regulatory definition of light work. (Statement of Errors at 22.) I can discern no conflict between the RFC finding and the definition of light work provided at 20 C.F.R. §§ 404.1567(b), 416.967(b). The RFC finding forecloses "constant pushing or pulling with either lower extremity" and the definition of light work includes work involving "some pushing and pulling of arm or leg controls." Id. This does not amount to a conflict for purposes of the Step 4 analysis.

11

McDonald also argues that it was error for the Administrative Law Judge not to base his RFC finding on the RFC opinion provided by his treating physician, Dr. Hrynick. Dr. Hrynick indicated on an RFC questionnaire that McDonald cannot sit, stand, or walk for a continuous period of even one hour. (Ex. 13F, R. 273.) An administrative law judge is permitted to rely on the RFC assessment of a consulting physician over the competing assessment of a treating physician, provided the consulting physician's assessment is consistent with the objective medical evidence and the administrative law judge provides reasons for rejecting the treating source's assessment. Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (reserving "controlling weight" for those treating source opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record" and articulating factors that govern the amount of weight assigned to treating source opinions); SSR 96-8p (describing evidence considered for purposes of RFC determination).[6] The Administrative Law Judge adequately explained that he gave Dr. Hrynick's opinion little weight because, among other things, the opinion appeared overstated in relation to the medical evidence in the file and was based, albeit to an unspecified degree, on "a right lower extremity impairment which has not been medically demonstrated." (R. 18.) In this he relied in part on Dr. Druskin's Case Analysis (Ex. 5F) and in part on Dr. Stucki's RFC Assessment (Ex 4F). The Administrative Law Judge also relied on a Medical Source Statement of Ability to Do Work-Related Activities prepared by

---

[6] The Rulings require the adjudicator to consider all of an individual's impairments at the RFC-stage of Step 4, including those that are not found to be "severe." SSR 96-8p. This explains why the Administrative Law Judge addressed concerns associated with McDonald's right lower extremity even though the cellulitis and edema issues did not make it into his Step 2 finding.

12

Dr. Shanker Gupta, M.D. (Ex 7F). Dr. Gupta's assessment is consistent with the Administrative Law Judge's RFC finding. It also supports the Administrative Law Judge's determination that Dr. Hrynick's RFC opinion is inconsistent with McDonald's ability to perform a wide range of activities of daily living. (Id., R. 259.) The limited extent of McDonald's analysis of the RFC portion[7] of the Step 4 finding does not warrant a more belabored discussion. For example, McDonald's presentation does not address the Administrative Law Judge's credibility determinations about his subjective symptoms.

**D.     Step 5**

The Commissioner only reaches Step 5 if he concludes that the claimant cannot perform any past relevant work. McDonald was unable to continue his past work as a truck driver or factory worker so the Administrative Law Judge continued past Step 4 to determine if suitable unskilled sedentary occupations exist in the workforce for McDonald.

At Step 5 the burden shifts to the Commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); Yuckert, 482 U.S. at 146 n.5. The Administrative Law Judge found that McDonald could perform specific unskilled sedentary occupations allowing for a sit/stand option, including order clerk, type copy clerk/examiner, and addresser. This finding was premised largely on testimony from a vocational expert who was presented with a hypothetical worker having McDonald's RFC. Based on the vocational expert's testimony and considering McDonald's age, education, work experience, and residual functional capacity, the Administrative Law Judge found that

---

[7]     The Administrative Law Judge found that McDonald cannot perform his past relevant work as a tannery worker or a truck driver because he is restricted from medium-duty work. (Finding 6, R. 21-22.) There is also evidence in the record that McDonald cannot maintain his commercial driver's license because he is an insulin-dependent diabetic.

McDonald can adjust to other work existing in significant numbers in the national economy, resulting in a finding of "not disabled." (Finding 10, R. 22-23.)

McDonald argues that this finding was in error because the Administrative Law Judge said in his ninth finding that the transferability of McDonald's job skills is not material to the determination of disability, yet said in his tenth finding that McDonald could perform substantial gainful work based in part on his work experience. (Statement of Errors at 29-30.) McDonald misapprehends the regulations. Transferable skills and work experience are not identical concepts. Work experience is a Step 5 vocational factor whether or not transferable skills exist. 20 C.F.R. §§ 404.1520(g)(1), 404.1565, 416.920(g)(1), 416.965. The transferability of skills issue will sometimes factor into an application of the Commissioner's Medical-Vocational Guidelines ("the Grid") at Step 5, but that is not the case here. See, e.g., Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 200.00(d)-(g); see also 20 C.F.R. §§ 404.1568(a), 416.968(a) (addressing skill requirements); SSR 82-41 ("[E]ven if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work.").

Finally, McDonald argues that the Administrative Law Judge should have credited his testimony about blurred vision and difficulty concentrating. (Statement of Errors at 30-31.) The record reflects that the vocational expert's opinion at the administrative hearing was that such a condition would negatively impact or preclude the jobs specified by the vocational expert. (R. 62-64.) However, vision and concentration limitations are not a part of the Administrative Law Judge's RFC finding. Oddly, though McDonald raises vision and concentration in his Step 5 challenge, McDonald does not even mention these alleged impairments in connection with Steps 2, 3, or 4, for which he bears the burden. The Administrative Law Judge's assessment is reasonable considering the record. As for vision, the record actually contradicts McDonald's

14

claim. Dr. Hrynick indicated that McDonald's impairments do not affect McDonald's vision, as the Administrative Law Judge noted in his decision. (Finding 5, R. 21; Ex. 13F, R. 276.) Moreover, McDonald testified that his blood sugar, which impacts his vision, is "fairly well controlled." (R. 63.) This is substantial evidence in support of the Administrative Law Judge's Step 5 determination that McDonald's vision does not rule out an ability to perform substantial gainful work, including the jobs identified by the vocational expert. As for concentration, McDonald fails to indicate that there is any medical evidence supporting a limitation on his capacity to concentrate. He simply testified at the hearing before the Administrative Law Judge that his mind wanders when he is "sitting there especially with [his] leg up" and that he sometimes falls asleep while watching television. (R. 64.) This is not probative of a vocational deficit. Although the Commissioner has the burden of proof at Step 5, McDonald cannot reasonably expect the Commissioner to cite substantial evidence negating the existence of a concentration impairment that McDonald has not developed or supported with his medical records and that only arises by dint of testimony having no evident bearing on his ability to work.

E.  **Divergence of Opinion**

The Administrative Law Judge did not agree *in toto* with the findings of the Federal Reviewing Official below. Pursuant to 20 C.F.R. § 405.370(a) the Administrative Law Judge cannot consider the decision of the Federal Reviewing Official to be evidence, but must "explain in detail why" he or she "agrees or disagrees with the substantive findings and overall rationale of the [FedRO's] decision." What the Administrative Law Judge said is that "the evidence supports a different assessment on residual functional capacity." (R. 23.) He also indicated that new medical source information came into the case subsequent to the Federal Reviewing Official's decision and that he considered testimony from the vocational expert that was not

available to the Federal Reviewing Official. (Id.) McDonald says that is not a detailed enough explanation, but he doesn't explain the harm. I cannot discern any harm. This perfunctory allegation of error should be overruled. Based on my review, the Administrative Law Judge's decision was more favorable to McDonald at Step 2 because he included diabetes mellitus where the Federal Reviewing Official had not. (Compare R. 10 with R. 73.) He also refined McDonald's RFC to provide for a sit/stand option and to rule out constant pushing or pulling with either lower extremity, a restriction that the Reviewing Official had not included in his decision. (Compare R. 16 with R. 73-74.) These findings reflect that the Administrative Law Judge made a more restrictive RFC finding than the Federal Reviewing Official, though the finding still did not lay the groundwork for a finding of disability at Step 5.

## Conclusion

For the reasons set forth in the foregoing discussion, I find no reversible error. Accordingly, I RECOMMEND that the Court AFFIRM the Administrative Law Judge's Decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 30, 2010